IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
COLUMBUS DIVISION

| | |
|---|---|
| **MARK A. JOHNSON on Behalf of Himself and All Others Similarly Situated**<br>**903 Preble Drive**<br>**Blacklick, Ohio  43004**<br><br>    Plaintiffs,<br><br>    v.<br><br>**MIDWEST LOGISTICS SYSTEMS, LTD.**<br>**7021 State Route 703**<br>**Celina, Ohio  45822**<br><br>    Defendant. | CASE NO. 2:11-CV-1061<br><br>UNITED STATES DISTRICT JUDGE |

## CLASS ACTION COMPLAINT

**(Jury Demand Endorsed Hereon)**

Now comes the Plaintiff, Mark A. Johnson, on behalf of himself and all other similarly situated individuals and alleges the following claims:

### PRELIMINARY STATEMENT

1. This is a class action on behalf of job applicants who were the subject of criminal background reports obtained by Midwest Logistics Systems, Ltd. ("Midwest") as a precondition of employment with Midwest during the five-year period preceding the filing of this action (the "Class Period") seeking remedies under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq*.

### JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3. Venue is proper in the Southern District of Ohio because a substantial part of the events or omissions giving rise to the allegations contained herein occurred in this judicial district. 28 U.S.C. § 1391(b). Further, Midwest maintains a principal place of business in the Southern District of Ohio.

## PARTIES

4. Mark A. Johnson ("Johnson") is a citizen of the State of Ohio and a "consumer" within the meaning of 15 U.S.C. § 1681a.

5. Midwest is a for-profit corporation with a principal place of business in Mercer County, Ohio.

6. Further, Midwest is a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers", as those terms are defined by 15 U.S.C. § 1681a.

## JOHNSON'S EMPLOYMENT EXPERIENCE

7. In September 2011, Johnson applied in person for a commercial truck driver position with Midwest.

8. Following a successful application process and interview, Johnson was advised that he would be hired pending receipt of a criminal background investigation.

9. On September 22, 2011, Midwest engaged Insurance Information Exchange ("IIX") to provide a consumer report, which included public record information purportedly regarding Johnson.

10. The information provided by IIX to Midwest was grossly inaccurate, reporting Johnson as having committed certain lewd acts upon children when in fact these crimes had been committed by other individuals bearing the same common name.

11. At no time following Johnson's in-person interaction with Midwest, did he receive a clear, conspicuous and stand-alone disclosure that a consumer report containing public record information would be obtained by Midwest from a third-party vendor for employment purposes.

12. IIX and other consumer reporting agencies traffic in the reputations of job applicants by purchasing public records data from various sources and compiling the information into a separate database used to generate consumer reports for a fee upon request. Information regarding a particular individual is often mixed with other persons bearing the same or a similar name, particularly when such persons also share a birth date.

13. Worse, consumer reporting agencies make this information available to employers instantly online, and rarely provide contemporaneous notice to job applicants that adverse information has been shared with a prospective employer.

14. Immediately after receiving Johnson's consumer report online from IIX, Midwest took adverse action against him by determining not to hire him based in whole or in part upon the information contained in the report.

15. At no time did Midwest provide Johnson with any verbal or written notice that it intended to take adverse action by declining employment based upon the results of the report.

16. Moreover, Midwest did not provide Johnson with a copy of the consumer report or a summary of his rights as required by 15 U.S.C. § 1681b(b)(3).

**ALLEGATIONS AS TO THE COMMON QUESTIONS**

17. Upon information and belief, Midwest has purchased consumer reports from consumer reporting agencies for many years, which Midwest uses as a basis to take adverse action against job applicants.

18. Midwest does not provide or obtain an appropriate stand alone disclosure and authorization from job applicants as required by 15 U.S.C. § 1681b(b)(2) prior to acquiring these consumer reports.

19. Further, Midwest does not provide pre-adverse or adverse action notice to job applicants, including a copy of the applicants' consumer report and a statement of the applicants' rights as required by 15 U.S.C. §§ 1681b(b)(3) and 1681m(a).

20. Midwest's violations of the FCRA have been willful, wanton and reckless in that Midwest knew, or reasonably should have known, that it was failing to comply with the requirements of the FCRA.

21. 15 U.S.C. §1681n(a) permits a consumer to recover statutory and punitive damages, along with attorneys' fees and costs for willful violations of the FCRA.

## CLASS ACTION ALLEGATIONS

22. Pursuant to F. R. Civ. P. 23, Johnson brings this action on behalf of the Class initially defined below:

> Consumers residing in the United States who applied for employment with Midwest, and about whom Midwest procured a consumer report for employment purposes during the application process.

23. Johnson also alleges the following sub-classes, of which he is a member:

**Inadequate Disclosure and Authorization**

   a. Consumers residing in the United States who applied for employment with Midwest in person, and during the application process, Midwest procured a consumer report without first, (i) providing the consumer(s) with a clear and conspicuous stand alone disclosure in writing in a document that consisted solely of the disclosure that a consumer report would be obtained for employment purposes, and (ii) obtaining the consumer'(s) proper written authorization to procure such consumer reports.

4

### Pre-Adverse Action Notice

b. Consumers residing in the United States who applied in person during the applicable limitations period as established by 15 U.S.C. 1681p, preceding the filing of this action and during its pendency, and against whom Midwest took adverse action based in whole or in part on information contained in the consumer report before providing a copy of the consumer report as required by 15 U.S.C. § 1681b(b)(3)(A)(i);

c. Consumers residing in the United States who applied in person during the applicable limitations period as established by 15 U.S.C. 1681p, preceding the filing of this action and during its pendency, and against whom Midwest took adverse action based in whole or in part on information contained in the consumer report before providing a description in writing of the rights of the consumer as required by 15 U.S.C. §1681b(b)(3)(A)(ii);

### Adverse Action Notice

d. Consumers residing in the United States who applied in person during the applicable limitations period as established by 15 U.S.C. 1681p, preceding the filing of this action and during its pendency, and against whom Midwest took an adverse action based in whole or in part on information contained in the consumer report without providing an oral, written or electronic notice that the consumer reporting agency did not make the decision to take adverse action and is unable to provide the consumer with the specific reason why the adverse action was taken, as required by 15 U.S.C. §1681m(a)(2)(B);

e. Consumers residing in the United States who applied in person during the applicable limitations period as established by 15 U.S.C. 1681p, preceding the filing of this action and during its pendency, and against whom Midwest took adverse action based in whole or in part on information contained in the consumer report without providing oral, written or electronic notice of the consumer's right to obtain within 60 days a free copy of the subject consumer report from the consumer reporting agency which prepared the report, as required by 15 U.S.C. §1681m(a)(3)(A).

24. Upon information and belief, the putative Class exceeds 300 Members. Information concerning the exact size of the putative class is within the exclusive possession of Midwest.

25. The Class members are so numerous that joinder of all members is impracticable.

26. Johnson's claims are typical of the claims of the other Class Members as all Class Members were similarly affected by Midwest's unlawful conduct in violation of the FCRA.

27. Johnson will fairly and adequately protect the interest of the Class Members and has retained counsel competent and experienced in complex class-action litigation. Johnson is a member of the Class and does not have any interests antagonistic to or in conflict with the members of the Class. Further, Johnson's claims are the same as those of the Class, which all arise from the same operative facts and are based upon the same legal theories.

28. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

    a. Whether Midwest violated 15 U.S.C. §1681b(b)(2)(A)(i) by failing to make a "clear and conspicuous" disclosure in a document that consists solely of the disclosure;

    b. Whether Midwest obtained a written authorization to procure or cause to be procured consumer reports for employment purposes required by §1681b(b)(2)(A)(ii);

    c. Whether Midwest provided a copy of the consumer report to the applicant or employee before declining to hire or discharging the applicant or employee based on the results thereof as required by 15 U.S.C. §1681b(b)(3)(A)(i);

    d. Whether Midwest provided a copy of a summary of the applicant or employee's rights under the FCRA before declining to hire or discharging the applicant or employee as required by 15 U.S.C. §1681b(b)(3)(A)(ii);

    e. Whether Midwest provided oral, written or electronic notice of the adverse action to the consumer that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer with the specific reasons why the adverse action was taken as required by 15 U.S.C. §1681m(a)(2)(B);

    f. Whether Midwest provided oral, written or electronic notice of the consumer's right to obtain a free copy of the consumer report on the consumer from the consumer reporting agency that prepared the report as required by 15 U.S.C. § 1681m(a)(3)(A));

  29. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Class is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

  30. Further, the prosecution of several actions by individual members of the Class would create a risk of varying adjudications with respect to members of the Class, as well as create inconsistent standards of conduct for those opposing the Class.  Additionally, individual actions by members of the Class may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

**<u>COUNT ONE – CLASS CLAIM</u>**
**<u>DISCLOSURE AND AUTHORIZATION</u>**

  31. Johnson realleges and incorporates by reference all preceding allegations of law and fact.

  32. Midwest willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) by failing to provide applicants and employees with a clear and conspicuous written disclosure in a document consisting solely of the disclosure that a consumer report may be obtained for employment purposes.

33. Midwest willfully violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by failing to obtain a valid authorization in writing from Johnson and the Class Members to procure a consumer report for employment purposes.

34. Johnson and the Class Members seek statutory damages for these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

35. Johnson and the Class Members also seek punitive damages for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

### COUNT TWO – CLASS CLAIM
### PRE-ADVERSE ACTION

36. Johnson realleges and incorporates by reference all preceding allegations of law and fact.

37. Midwest willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an employment decision to Johnson and the Class Members before taking adverse action that was based in whole or in part on that report.

38. Midwest willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the summary of rights required by this section to Johnson and the Class Members before taking adverse action that was based in whole or in part on a consumer report.

39. Johnson and the Class Members seek statutory damages for these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

40. Johnson and the Class Members also seek punitive damages for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

### COUNT THREE – CLASS CLAIM
### ADVERSE ACTION

41. Johnson realleges and incorporates by reference all preceding allegations of law

and fact.

42. Midwest willfully violated 15 U.S.C. § 1681m(a)(3)(A) by failing to provide Johnson and the Class Members with oral, written or electronic notice of the consumer's right to obtain within sixty (60) days a free copy of the consumer report regarding the consumer from the consumer reporting agency that prepared the report.

43. Midwest willfully violated 15 U.S.C. § 1681m(a)(2)(B) by failing to provide Johnson and the Class Members with oral, written or electronic notice that the consumer reporting agency did not make the decision to take adverse action and is unable to provide the consumer with the specific reason why the adverse action was taken.

44. Johnson and the Class Members seek statutory damages for these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

45. Johnson and the Class Members also seek punitive damages for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE,** Johnson and the putative class respectfully pray for the following relief:

A. An order certifying the proposed class herein pursuant to Fed. R. Civ. P. 23(b)(3) and appointing the undersigned counsel to represent same;

B. The creation of a common fund available to provide notice of and remedy Midwest's unlawful conduct;

C. Statutory and punitive damages for all class claims; and

D. Attorneys' fees, expenses and costs.

Respectfully submitted,

STUMPHAUZER, O'TOOLE, McLAUGHLIN,
McGLAMERY & LOUGHMAN CO., LPA

/s/ Matthew A. Dooley
Dennis M. O'Toole (0003274)
Anthony R. Pecora (0069660)
Matthew A. Dooley (0081482)
5455 Detroit Road
Sheffield Village, Ohio  44054
Tel:		(440) 930-4001
Fax:		(440) 934-7208
Email:	dotoole@sheffieldlaw.com
		apecora@sheffieldlaw.com
		mdooley@sheffieldlaw.com

**JURY DEMAND**

Plaintiffs, Mark A. Johnson and the putative class demand a trial by a jury as to all issues presented herein.

/s/ Matthew A. Dooley