**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARK A. JOHNSON,** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:11-CV-1061 |
| | : | |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **MIDWEST LOGISTICS SYSTEMS, LTD.** | : | Magistrate Judge Kemp |
| | : | |
| Defendant. | : | |

## FINAL ORDER & JUDGMENT

This matter is before the Court on Plaintiff's Unopposed Motion for Attorney Fees, Reimbursement of Expenses and Incentive Award to the Named Plaintiff, (Doc. 29), and the parties' Joint Motion for Final Approval of the Class Action Settlement and Certification of the Class for Settlement Purposes, (Doc. 31). Pursuant to Fed. R. Civ. P. 23(e), the Court finds that the settlement of this action, as embodied in the terms of the Amended Stipulation, (Doc. 26), is fair, reasonable and adequate in light of the factual, legal, practical and procedural considerations raised by this suit. The Court hereby GRANTS the parties' request for final approval of this settlement and class certification for settlement purposes. The Court further GRANTS Plaintiff's motion for attorney fees and expenses in the amount of 33% of the Settlement Fund or $149,285.40, as well as the requested incentive award for the named plaintiff in the amount of $12,500.[1] This action is hereby DISMISSED.

## I. BACKGROUND

On November 28, 2011, Plaintiff Mark Johnson ("Johnson" or "Class Representative"), filed this class action lawsuit (the "Lawsuit") against Defendant Midwest Logistics Systems, Ltd.

---

[1] Capitalized terms in this Order shall, unless otherwise defined, have the same meaning as in the Amended Stipulation.

("Midwest").  Johnson asserted class claims against Midwest under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*  Midwest denied any and all liability alleged in the Lawsuit.

After extensive arms-length negotiations, Johnson and Midwest (jointly, the "Parties") entered into a Stipulation of Settlement which was later amended on March 11, 2013, (Doc. 26), (the "Amended Stipulation"), which is subject to review under Fed. R. Civ. P. 23.  The salient terms of the Amended Stipulation are as follows:

- Midwest agrees to pay a total sum of Four Hundred Fifty-Two Thousand Three Hundred Eighty Dollars and no cents ($452,380.00) (the "Settlement Funds"), from which Class Members shall be paid as follows:

    - **Preliminary Settlement Class** – Each member of the Preliminary Settlement Class who is not a member of the Pre-Adverse Action Class shall receive a gross sum of $260.00, from which Class Counsel's attorneys' fees and costs and an Incentive Award shall be deducted.

    - **Pre-Adverse Action Class** – Class Members in the Pre- Adverse Action Class shall receive a gross sum of $1,000.00, from which Class Counsel's attorneys' fees and costs and an Incentive Award shall be deducted.

- The Settlement Funds will settle all FCRA claims set forth by the Settlement Classes, except for potential claims under 15 U.S.C. § 1681s-2(b), and include attorney fees and costs not to exceed 33% of the Settlement Funds and an Incentive Award to named plaintiff Mark Johnson in the amount of $12,500.

- In the event that settlement checks are returned as undeliverable, are not cashed within ninety (90) days, or in the event that the Settlement Funds are not completely distributed for any reason, any remaining funds shall be distributed to Midwest as reimbursement for the costs of notice and administration and a *cy pres* fund selected by Class Counsel subject to the Court's approval.

- Midwest shall not be responsible for paying any sum of money exceeding the amount described as the Settlement Funds. Midwest shall be responsible for the cost of notice and administration.

- Upon final approval of the settlement at the Final Fairness Hearing, each Class Member who has not opted out of the proposed settlement shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all claims and causes of action against Midwest relating to or arising out of the facts of this suit.

On March 11, 2013, upon consideration of the Amended Stipulation and the record, this Court entered an order preliminarily approving the Amended Stipulation (the "Preliminary Approval Order"), (Doc. 27). Pursuant to the Preliminary Approval Order, this Court, among other things, (i) preliminarily certified (for settlement purposes only) a class of plaintiffs (the "Class Members") with respect to the claims asserted in the Lawsuit; (ii) preliminarily approved the proposed settlement; (iii) appointed Johnson as the Class Representative; (iv) appointed Mr. Dennis M. O'Toole, Mr. Matthew A. Dooley and Mr. Anthony R. Pecora as Class Counsel; and, (v) set the date and time of the Fairness Hearing.

On May 13, 2013, Plaintiff filed his unopposed Motion for an Award of Attorney Fees, Reimbursement of Expenses and Incentive Award to the Named Plaintiff. On May 20, 2013, the Parties filed their Motion for Final Approval of Class Action Settlement and Certification of the Class for Settlement Purposes (the "Final Approval Motion"). On May 23, 2013, this Court held a Fairness Hearing pursuant to Fed. R. Civ. P. 23 to determine whether the Lawsuit satisfies the applicable prerequisites for class action treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should therefore be approved by the Court.

## II. LAW AND ANALYSIS

*A. Class Certification for the Purposes of Settlement*

Pursuant to Rule 23(b)(3), the Parties request that the Lawsuit be certified as a class action on behalf of the following classes of plaintiffs:

- **Preliminary Settlement Class** – Settlement Class Members about whom Midwest procured a consumer report in connection with the Class Members' application for employment or employment with Midwest between November 28, 2006 and November 28, 2011.

- **Pre-Adverse Action Class** – a subclass of the Preliminary Settlement Class,

3

>which includes Settlement Class Members about whom Midwest procured a Consumer Report and who had their application for employment denied by Midwest based on information contained in their Consumer Report between November 28, 2006 and November 28, 2011.

There are approximately 1,610 Class Members. Of these, 46 are in the Pre-Adverse Action Class and 1,564 are in the Preliminary Settlement Class only.

The Court now finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23 for settlement purposes, namely:

- The Class Members are so numerous that joinder of all of them in the Lawsuit is impracticable;

- There are questions of law and fact common to the Class Members, which predominate over any individual questions;

- The claims of the Class Representatives are typical of the claims of the Class Members;

- The Class Representative and Class Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and

- Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

Accordingly, pursuant to Rule 23(b)(3), the Court hereby certifies the above-defined Preliminary Settlement Class and Pre-Adverse Action Class with respect to the claims asserted in the Lawsuit. Pursuant to Rule 23, the Court further certifies Plaintiff Mark Johnson as the Class Representative and Mr. Dennis M. O'Toole, Mr. Matthew A. Dooley and Mr. Anthony R. Pecora as Class Counsel.

### B. Sufficiency of Notice

In class actions certified under Rule 23(b)(3), notice must meet the requirements of both Fed. R. Civ. P. 23(c)(2) and 23(e). Rule 23(e) specifies that no class action may be dismissed or compromised without court approval, preceded by notice to class members. Fed. R. Civ. P.

23(e). Rule 23(c)(2) requires that notice to the class be "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c). The Rule also requires that the notice inform potential class members that: (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel. *Id.* The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, *Manual for Complex Litig.* § 21.312 (4th 2004).

    Here, the approved class action notices were mailed to Class Members in conformity with this Court's Preliminary Approval Order. The Parties engaged in extensive efforts to obtain accurate mailing addresses for Class Members. *See* Affidavit of Kristin L. Dahl, Doc. 31, Ex. 1. Ultimately, more than 83% of the Class Members received notice via mail; only 17% of the Class Members did not receive notice due to unavailable, outdated or invalid addresses. In addition, the Parties established a website containing copies of the class notice, and, in compliance with the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, Midwest served written notice of the proposed class settlement on the United States Attorney General and the Attorneys General of the states where Class Members are known to reside. Thus, only a small fraction of the class did not have the opportunity to object, exclude or be heard.  The Court therefore finds that the Parties have satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and that notice here constituted the best notice practicable under the circumstances. The Court further finds that notice was clearly designed to advise Class Members of their rights.

*C. Whether Fair, Reasonable, and Adequate*

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *UAW v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(1)(C)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW,* 497 F.3d at 631. In reviewing a proposed class action settlement, the district court has "'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205–06 (6th Cir. 1992)).

In addition, "although not included in the seven *UAW* factors, in evaluating the fairness of a settlement [this Circuit] ha[s] also looked to whether the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'" *Vassalle*, 708 F.3d at 755 (quoting *Williams v. Vukovich,* 720 F.2d 909, 925 n. 11 (6th Cir. 1983)). "[S]uch inequities in treatment make a settlement unfair." *Id*. This does not, however, preclude approval of class action settlements that include incentive awards for named plaintiffs. The Sixth Circuit has "never explicitly passed judgment on the appropriateness of incentive awards," and "ha[s] found that 'there may be circumstances where incentive awards are appropriate.'" *Vassalle*, 708 F.3d at 756 (quoting *Hadix v. Johnson,* 322 F.3d 895, 897–98 (6th Cir. 2003)).

Per the terms of the Amended Stipulation, the Class Representative, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Amended Stipulation. In exchange for this release, Midwest will pay into a Settlement Fund a gross sum of $452,380.00 to be distributed as follows:

- Each member of the Preliminary Settlement Class who is not a member of the Pre-Adverse Action Class shall receive a gross sum not to exceed $260.00 from which Class Counsel's attorneys' fees and costs and the Incentive Award shall be deducted;

- Each member of the Pre-Adverse Action Class shall receive a gross sum not to exceed $1,000.00 from which Class Counsel's attorneys' fees and costs and the Incentive Award shall be deducted;

- The Class Representative shall receive a total sum of $12,500.00 as an Incentive Reward.

The Court finds that this settlement, on the terms and conditions set forth in the Amended Stipulation, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the Class Members, especially in light of the benefits to Class Members; the strength of the Plaintiff's case; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the risk of collecting any judgment obtained on behalf of the class; and, the limited amount of any potential total recovery for the class. For the same reasons, the Court also concludes that the public interest is served by this settlement.

The Court further finds that the Parties participated in arms-length negotiations, engaging the assistance of both a third-party mediator and – on occasion – this Court to resolve disputes. Thus, the Court concludes that the risk of fraud or collusion is negligible. *See Hainey v. Parrot*, 617 F. Supp.2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and

without collusion between the parties.") (citing *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005) and *In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347, 3521 (E.D.N.Y. 2000)).

The opinions of class counsel and class representatives, as expressed in the briefings and at the fairness hearing, also support approval of the Amended Stipulation, as do the reactions of the absent class members. As discussed above, notice of this settlement was issued in a manner consistent with due process and Rule 23. Accordingly, absent class members had an opportunity to object and be heard. Out of 1,610 total Class Members, only one objection was filed and no objections were raised at the fairness hearing. "[A] relatively small number of class members who object is an indication of a settlement's fairness." *Brotherton v. Cleveland*, 141 F.Supp.2d 894, 906 (S.D. Ohio 2001) (citing *Newberg on Class Actions, supra,* at § 11.48). In addition, the sole written objection, (Doc. 28), appears to express a general policy disagreement with the FCRA, rather than concerns about the fairness, reasonableness or adequacy of the settlement. *See id.* (approving settlement where the only filed objection primarily dealt with matters other "than any deficiency in the settlement agreement"). Furthermore, the objector (who articulated a desire to be excluded from the settlement) and seven additional opt-out members will be excluded from the class and settlement and will not be bound by the settlement. The identity of these eight persons is set forth in the Opt-Out List filed with this Court. (Doc. 30).

Finally, although there is a substantial incentive award of $12,500 to the named plaintiff in this case, relief to un-named class members is not perfunctory. *See Vassalle*, 708 F.3d at 755. Indeed, the settlement provides for an amount well above the minimum statutory damages of $100.00 for each alleged violation of the FCRA. According to the terms of the Settlement, Pre-Adverse Action Class Members will receive $1,000.00 – the maximum statutory damage

8

recovery under the FCRA. The remaining Class Members will receive $260.00 – more than twice the FRCA's statutory minimum. Although these amounts will be subject to deductions for attorney fees and costs and the incentive award, the awards are still well-within the FCRA's statutory damages range. The Court therefore finds that the incentive award does not undermine the fairness of the settlement. The Court further finds that the actions and efforts of the named plaintiff in securing such benefits for the absent class members renders the $12,500 incentive award appropriate in this circumstance. *See Hainey*, 617 F.Supp.2d at 677 ("In this district… trial judges have approved incentive awards for class representatives after consideration of several factors, including their actions to protect the rights of the class members and whether those actions resulted in a substantial benefit to the class members, whether the class representative assumed any direct or indirect financial risk, and the amount of time and effort spent pursuing the litigation.") (citing *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 250 (S.D. Ohio 1991)).

### D. Attorney Fees and Costs

The "common fund doctrine" or percentage-of-recovery method has been recognized by the Sixth Circuit as an appropriate formula by which to calculate attorney fees in common fund cases. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993). "In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Id*. at 516. In reviewing the reasonableness of a fee award, this Court considers six factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis [the lodestar cross-check]; (5) the complexity of the litigation; and

(6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

Class Counsel request an award of attorney fees and expenses as a percentage of the Settlement Funds, to be capped at a gross percentage of thirty-three percent (33%) of the actual Settlement Funds by Midwest Logistics, Inc. to and for the benefit of the class. Because the Settlement Funds are $452,380.00, Class Counsel seek an attorney fee award in the amount $149,285.40. This sum includes all costs and expenses associated with the case and incurred by Class Counsel.

In applying the *Ramey* test, the Court finds that Class Counsel's efforts affirm the reasonableness of the requested fee. As discussed above, Class Counsel successfully negotiated settlement awards for each class – some receiving maximum statutory damages – and litigated to maximize the class size to include potential claims spanning a five-year period. The case was taken on a contingent basis, and dealt with a complex statutory scheme. The professional skill and standing of counsel on both sides was substantial. Society's stake in rewarding attorneys for obtaining such benefits also favors the issuance of such an award.

In addition, Class Counsel's fee request is reasonable when cross-checked with the lodestar method. The 'lodestar' amount "is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). "In contrast to employing the lodestar method in full, when using a lodestar cross-check, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re Cardinal Health Inc. Securities Litig.*, 528 F.Supp.2d 752, 767 (S.D. Ohio 2007) (quoting *In re WorldCom Sec. Litig.,* 388 F. Supp.2d 319, 355 (S.D.N.Y. 2005)). Here, Class Counsel expended over 158 hours to prosecute this action at

an average rate of $375.00 per hour, for a total approximate lodestar amount of $64,936.85. *See* Declaration of Anthony R. Pecora, Doc. 29, Ex. A. Additionally, Class Counsel expended approximately $3,264.35 in costs associated with the case. *Id*. Accordingly, were this Court to approve the award of all litigation expenses, the requested common fund fee would be reduced to $146,021.05, and the lodestar multiplier would be 2.25. The Court finds this multiplier is reasonable under the circumstances. Furthermore, Class Counsel's fee request is consistent with the general fee awards in class action cases: "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." 4 Newberg on Class Actions § 14:6 (4th ed.).

For these reasons, the Court hereby approves Class Counsel's requested $149,285.40 common fund fee award.

### III. CONCLUSION

For the reasons set forth above, the Motions are granted and the Court hereby ORDERS as follows:

1. Pursuant to Fed. R. Civ. P. 23(b)(3), the Lawsuit is hereby certified as a class action on behalf of the following classes of plaintiffs with respect to the claims asserted in the Lawsuit:

    - **Preliminary Settlement Class** – Settlement Class Members about whom Midwest procured a consumer report in connection with the Class Members' application for employment or employment with Midwest between November 28, 2006 and November 28, 2011.

    - **Pre-Adverse Action Class** – a subclass of the Preliminary Settlement Class, which includes Settlement Class Members about whom Midwest procured a Consumer Report and who had their application for employment denied by Midwest based on information contained in their Consumer Report between November 28, 2006 and November 28, 2011.

2. Pursuant to Fed. R. Civ. P. 23, the Court certifies Plaintiff Mark Johnson as the

Class Representative and Mr. Dennis M. O'Toole, Mr. Matthew A. Dooley and Mr. Anthony R. Pecora as Class Counsel.

      3.      The Amended Stipulation, which was filed on March 11, 2013 shall be deemed incorporated herein, and the proposed settlement is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court.  The material terms of the Amended Stipulation include, but are not limited to, the following:

    a.    Midwest will pay into a Settlement Fund a gross sum of $452,380.00 from this Settlement Fund:

        1.    Each member of the Preliminary Settlement Class who is not a member of the Pre-Adverse Action Class shall receive a gross sum not to exceed $260.00 from which Class Counsel's attorneys' fees and costs and the Incentive Award shall be deducted;

        2.    Each member of the Pre-Adverse Action Class shall receive a gross sum not to exceed $1,000.00 from which Class Counsel's attorneys' fees and costs and the Incentive Award shall be deducted;

        3.    The Class Representative shall receive a total sum of $12,500.00 as an Incentive Reward.

    b.    The Court awards to Class Counsel attorneys' fees and expenses in the amount of 33% of the total Settlement Fund, or $149,285.40.

    c.    Any remaining funds from the Settlement Fund shall be first used to reimburse Midwest for the costs it incurred for notice and administration of the class; and, after Midwest is so reimbursed, any remaining sums shall be distributed to a *cy pres* beneficiary selected by the Parties and approved by the Court.

      4.      The Parties' recommendation of the West Side Catholic Center's Identification Crisis Collaborative as a c*y pres* beneficiary is consistent with the gravamen of the Litigation, and shall be used to support the community through a disbursement of uncashed checks, if any, pursuant to Paragraph 3(c) above.

12

5. This order is binding on all Class Members, except those individuals identified in the Opt-Out List (Doc. 30), who validly and timely excluded themselves from the class.

6. The Class Representative, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Amended Stipulation. Pursuant to the release contained in the Amended Stipulation, the Released Claims are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this order.

7. The Lawsuit is hereby dismissed with prejudice in all respects.

8. This Order is not, and shall not be construed as, an admission by Midwest of any liability or wrongdoing in this or in any other proceeding.

9. The Court hereby retains continuing and exclusive jurisdiction over the Parties and all matters relating to the Lawsuit and/or Amended Stipulation, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this order.

**IT IS SO ORDERED.**

                                                 s/Algenon L. Marbley_____
                                                 **Algenon L. Marbley**
                                                 **United States District Court Judge**

**DATE: May 25, 2013**